## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

CHRISTYLE BROWN,

     Plaintiff,

v.

                                CASE NO.:

HEALTHCARE   REVENUE   RECOVERY
GROUP, LLC,

     Defendant.

_____/

## **COMPLAINT**

1.     Plaintiff, Christyle Brown, alleges Defendant, Healthcare Revenue Recovery Group, LLC, robocalled her more than 1,000 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 et seq. ("FCCPA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), Invasion of Privacy ("IOP"), and Intentional Infliction of Emotional Distress ("IIOED").

2.     Shockingly, Americans were bombarded with 4.7 *billion* robocalls last month—an increase by an incredible 370% just since December 2015.[1]

3.     Upon information and belief, Healthcare Revenue Recovery Group, LLC robocalled the Plaintiff at least 1,000 times.

4.     Upon information and belief, Healthcare Revenue Recovery Group, LLC has a corporate policy to robocall people thousands of times.

5.     "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.'

---

[1] YouMail Robocall Index, available at http://RobocallIndex.com/

137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242, 1256 (11th Cir. 2014). Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

6.      Robocalls are very inexpensive to make. As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

7.      The TCPA was enacted to prevent companies like Healthcare Revenue Recovery Group, LLC from invading American citizens' privacy and prevent illegal robocalls.

8.      Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; *see also Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

9.      According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

## JURISDICTION AND VENUE

10.      Jurisdiction and venue for purposes of this action are appropriate and conferred by 28

U.S.C. §1331.

11.     Violations described in the Complaint occurred while Plaintiff was in Eustis, Florida.

## **FACTUAL ALLEGATIONS**

12.     Plaintiff is a natural person and citizen of the State of Florida, residing in Eustis, Florida.

13.     Plaintiff is a "consumer" as defined in Florida Statute § 559.55(8) and 15 U.S.C. § 1692(a)(3).

14.     Plaintiff is an "alleged debtor."[2]

15.     Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

16.      Defendant is a limited liability company with its principal place of business in Sunrise, Florida and conducts business in the State of Florida.

17.     Defendant is a "debt collector" as defined by Florida Statute § 559.55(7) and 15 U.S.C. § 1692(a)(6).

18.     The debt that is the subject matter of this complaint is a "consumer debt" as defined by Florida Statute § 559.55(6).

19.     Plaintiff is the regular user and carrier of the cellular telephone number at issue, (561) 352-4052.

20.     Defendant intentionally harassed and abused Plaintiff on numerous occasions by calling several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

---

[2] The FCCPA defines the term "debtor" as "any natural person obligated or allegedly obligated to pay any debt." FLA. STAT. 559.55(2). Thus, not only is the actual debtor protected under the Act, "an alleged debtor is [also] protected by the Act from the prohibited practices set forth [in subsection 559.72]." See Desmond v. Accounts Receivable Mgmt., 72 So. 3d 179, 181 (Fla. 2nd DCA 2011) (finding that alleged debtor whose identity was mistaken for that of the actual debtor by defendant could sue under the Act); see also Bryant v. Credit Adjustments, Inc., 2011 U.S. Dist. LEXIS 25834 (S.D. Fla. 2011) (finding that non-debtor had standing to sue under the FCCPA where non-debtor reasonably believed she was the person who allegedly owed the debt).

21.     Based on the Plaintiff's caller ID, Defendant's calls to Plaintiff's phone originated from the numbers (561) 286-3697, (561) 600-5177, (561) 327-7098, and 1-800-984-9115.

22.     Defendant did not have the "express consent" of the Plaintiff to call her cell phone.

23.     It is the Defendant's burden to prove they had "express consent" per the TCPA to call the Plaintiff on her cell phone using an "automatic telephone dialing system" (ATDS) or automated or prerecorded voice for each account they were calling on.

24.     Defendant was put on notice Plaintiff did not want the Defendant contacting her.

25.     In or about April of 2018, Plaintiff began receiving calls from the Defendant regarding an alleged debt.

26.     The Plaintiff answered a call from the Defendant in approximately April of 2018, and was met with a recording asking that she stay on the line to speak with a representative and Plaintiff continued to hold until a representative came on the line. Defendant stated the call was to collect a debt and Plaintiff responded that she had no medical debts. At that time, Plaintiff asked the Defendant what company the Defendant was collecting a debt for, but was not given an answer. Therefore, Plaintiff told the Defendant not to call her phone again; however, the calls continued.

27.     Plaintiff asked the Defendant to stop calling her phone the first time she received a call from the Defendant.

28.     Even though Plaintiff asked the Defendant to stop calling her, the Defendant continued to harass the Plaintiff by placing calls day after day.

29.     On multiple occasions, when Plaintiff would answer Defendant's call she was met with a pre-recorded voice.

30.     Receiving a call without a live representative on the line is indicative of an ATDS.

31.     Most recently, Plaintiff received a call from Defendant on February 24, 2020, answered the call, and was again met with a prerecorded voice.

4

32.     Defendant left the following generic pre-recorded voicemail on Plaintiff's cellular telephone, on numerous occasions, in an attempt to collect the alleged debt:

> **"This is HRRG calling. Please return our call at 1-800-984-9115. HRRG is a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose. Please do not erase this message until you've returned our call at 1-800-984-9115. Visit us at hrrgcollections.com."**

33.     Defendant did not have the express consent of the Plaintiff to call her on the account they called her on.

34.     Plaintiff expressly revoked any express consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone number by the use of an ATDS or a pre-recorded or artificial voice.

35.     Defendant attempted to collect a debt by this campaign of telephone calls.

36.     Defendant made at least one call to (561) 352-4052.

37.     Defendant made at least one call to (561) 352-4052 using an ATDS.

38.     Defendant made at least one call to (561) 352-4052 using a pre-recorded voice.

39.     Defendant made at least forty (40) calls to (561) 352-4052 using a pre-recorded voice.

40.     Defendant made at least five hundred (500) calls to (561) 352-4052.

41.     Defendant made at least five hundred (500) calls to (561) 352-4052 using an ATDS.

42.     Defendant made at least five hundred (500) calls to (561) 352-4052 using a pre-recorded voice

43.     Defendant made at least one thousand (1,000) calls to (561) 352-4052.

44.     Each call the Defendant made to (561) 352-4052 in the last four years was made using a pre-recorded voice.

45.     Each call the Defendant made to the Plaintiff's cell phone was done so without the "express permission" of the Plaintiff.

46.     Defendant has called other people's cell phones without their express consent.

47.     Upon information and belief, each call the Defendant made to the Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

48.     Plaintiff requested the Defendant to stop calling her cell phone, however, the Defendant continued to make calls.

49.     Plaintiff's conversations with the Defendant putting them on notice that she did not want more phone calls were ignored.

50.     Upon information and belief, Defendant has recorded at least one conversation with the Plaintiff.

51.     Defendant has made approximately one thousand (1,000) calls to Plaintiff's aforementioned cellular telephone number since in or about April of 2018 which will be established exactly once Defendant turns over their dialer records.

52.     Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abusive robocalls.

53.     By effectuating these unlawful phone calls, Defendant has caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

54.     Defendant's aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in her cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

55.     Defendant's phone calls harmed Plaintiff by wasting her time.

56.     Defendant's phone calls harmed Plaintiff by causing her embarrassment.

57.     Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used." In re: *Rules Implementing the TCPA of 1991*, 23 FCC Rcd

559, 562 (2007). Defendant's phone calls harmed Plaintiff by depleting the battery life on her cellular telephone, and by using minutes allocated to Plaintiff by her cellular telephone service provider.

58.     Defendant's corporate policy and procedures are structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant may have mistakenly believed it had.

59.     Defendant's corporate policy and procedures provided no means for the Plaintiff to have her aforementioned cellular number removed from the call list.

60.     Defendant has a corporate policy of using an ATDS or a pre-recorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

61.     In the last 3 years, the Defendant has had 341 complaints reported to the Better Business Bureau (BBB), of which 279 of those complaints are classified as being related to "Billing/Collection Issues". (According to bbb.org in March, 2020).

62.     Plaintiff expressly revoked any consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant's placement of the calls. Making money while breaking the law is considered an incentive to continue violating the TCPA and other state and federal statutes.

63.     None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

64.     Defendant violated the TCPA, FCCPA and FDCPA with respect to the Plaintiff.

65.     Defendant willfully or knowingly violated the TCPA with respect to the calls to Plaintiff's cellular telephone.

## **COUNT I**
### **(Violation of the TCPA)**

66.     Plaintiff incorporates Paragraphs one (1) through sixty-five (65).

67.    Defendant willfully violated the TCPA with respect to the Plaintiff each time they called the Plaintiff after she revoked her consent to be called by them using an ATDS or pre- recorded voice.

68.    Defendant knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialed calls made to Plaintiff's cellular telephone after Plaintiff revoked her consent to be called by them using an ATDS or pre-recorded voice.

69.    Defendant, Healthcare Revenue Recovery Group, LLC, repeatedly placed non-emergency telephone calls to the wireless telephone number of Plaintiff using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

70.    As a result of Defendant's illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

71.    Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, Healthcare Revenue Recovery Group, LLC, from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

### COUNT II
**(Violation of the FCCPA)**

72.    Plaintiff incorporates Paragraphs one (1) through sixty-five (65).

73.    At all times relevant to this action Defendant is subject to and must abide by the law of Florida, including Florida Statute § 559.72.

74.    Defendant has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of her family with such frequency as can reasonably be expected to harass the debtor or her family.

75.     Defendant has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her family.

76.     Defendant has violated Florida Statute § 559.72(9) by attempting to enforce a debt when Defendant knows that the debt is not legitimate or assert the existence of some legal right when Defendant knows that right does not exist.

77.     Defendant's actions have directly and proximately resulted in Plaintiff's prior and continuous sustaining of damages as described in Florida Statute § 559.77.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder of future illegal conduct, and any other such relief the court may deem just and proper.

### <u>COUNT III</u>
### (Violation of the FDCPA)

78.     Plaintiff incorporates Paragraphs one (1) through sixty-five (65).

79.     At all times relevant to this action Defendant is subject to and must abide by 15 U.S.C. § 1692 *et seq*.

80.     Defendant engaged in an act or omission prohibited under 15 U.S.C. § 1692(d) by willfully engaging in conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

81.     Defendant engaged in an act or omission prohibited under 15 U.S.C. § 1692(d)(5) by causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

82.     Defendant engaged in an act or omission prohibited under 15 U.S.C. § 1692(f) by using unfair and unconscionable means to collect or attempt to collect any debt.

**WHEREFORE,** Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages, costs, interest, attorney fees, enjoinder of future illegal conduct, and any other such relief the court may deem just and proper.

## COUNT IV
### (Invasion of Privacy – Intrusion Upon Seclusion)

83.     Plaintiff incorporates Paragraphs one (1) through sixty-five (65).

84.     Defendant through its collection conduct, has repeatedly and intentionally invaded Plaintiff's privacy.

85.     All of the calls made to Plaintiff's cell phone by Defendant and its agents using an automatic telephone dialing system were made in violation of the TCPA, and were unreasonable and highly offensive invasions of Plaintiff's right to privacy.

86.     Defendant's persistent autodialed calls to her cellular phone eliminated Plaintiff's right to be left alone.

87.     Defendant's autodialed collection calls disrupted Plaintiff's privacy, disrupted Plaintiff's sleep, disrupted Plaintiff during mealtimes, disrupted Plaintiff during her work, and continually frustrated and annoyed Plaintiff.

88.     These persistent autodialed collection calls eliminated the peace and solitude that the Plaintiff would have otherwise had in Plaintiff's home and anywhere else Plaintiff went with her cellular phone.

89.     By calling her cellular phone, Plaintiff had no escape from these collection calls either in her home or when she left the home.

90.     By persistently autodialing Plaintiff's cellular phone without prior express consent, Defendant invaded Plaintiff's right to privacy, as legally protected by the TCPA, and caused Plaintiff to suffer concrete and particularized harm.

91.     Defendant's harassing collection conduct and tactic of repeatedly auto dialing Plaintiff to

her cellular phone after requests to stop is highly offensive to a reasonable person.

92.    Defendant intentionally intruded upon Plaintiff's solitude and seclusion.

93.    As a result of Defendant's action or inaction, Plaintiff has been damaged.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

## COUNT V
### (Intentional Infliction of Emotional Distress)

93.    Plaintiff incorporates Paragraph one (1) through sixty-five (65).

94.    The harassing and abusive conduct, including the repetitive robocalls to Plaintiff, have caused severe emotional harm and distress, embarrassment, aggravation, and other losses.

95.    It is beyond the pale of decency to robocall anybody 1,000 times.

96.    The damage to the Plaintiff was and is immense. The Plaintiff had a stunned sense of helplessness because she could not stop the calls.

97.    To call somebody this amount of time is inhumane.

98.    It is utterly uncivilized to robocall someone 1,000 times.

99.    If a person called another person 1,000 times, the caller would most likely be in prison for criminal harassment.

100.    This is especially true if the caller continued to make the calls after being told to stop and never had permission to call in the first place.

101.    The calls to Plaintiff by Defendant are harassing, aggravation and highly intrusive.

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered against Defendant for punitive damages and such other and further relief as the Court shall deem just and proper.

Respectfully submitted,

*Amanda J. Allen, Esq.*
**Amanda J. Allen, Esquire**
Florida Bar No. 0098228
William Peerce Howard, Esquire
Florida Bar No. 0103330
THE CONSUMER PROTECTION FIRM
4030 Henderson Boulevard
Tampa, FL 33629
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
Amanda@TheConsumerProtectionFirm.com
Billy@TheConsumerProtectionFirm.com
***Attorney for Plaintiff***